May it please the court. My name is Gerard Smetana, and I'm representing Richard Lewis, an almost 30-year employee of Dominick's, which is a retailer here in Chicago, which has since closed its doors. And we allege this is a case under Section 301 of the National Labor Relations Act, under which we understand that we have to prove a violation, both that the company breached its collective bargaining agreement and that the union breached its duty of fair representation. We think on the record, although I know that the other side disagrees, we think on the record that the company clearly breached the collective bargaining agreement, and I have to address it because they want remedy the other way. Basically, the agreement in Section 9.4 of that document between the union and the company spells out that the only time that the company can terminate or otherwise discipline, in this case he was suspended, an employee, is for just cause. And there's another sentence after that. Just cause also relates only to matters that happen in the workplace. In this case, what transpired was... And before you get into that, could you just spend some time on their allegation that these claims were made in an untimely manner? I will get to that right now.  Thank you, Your Honor. It is our position that we filed the 10B period, as you know, a six-month statute of limitations, which is a borrowed statute. And the applicable time that starts the time running here is the company's March 9 response to essentially six continuing grievances filed by the union, March 9 of 2012. The issue... Oh, and so we filed our... I first became involved in the case on August 28 of 2012, and I call the Court's attention to Exhibit B, which is contained in the second amended complaint. All of our exhibits are contained in the second amended complaint, except a handful which are in the third amended complaint. And that Exhibit B, we say, is filed within six months of the March 9 letter. The March 9 letter of the company, the sixth response to the union's grievances, essentially spells out, it does spell out exactly what the company wanted. And they wanted Mr. Lewis to explain what transpired on August 22, 2011, which is the date he acted in self-defense on his own property and shot a man who was trying to... His life was in danger. His neighbor, from the record in the criminal case we find, basically had just come out of prison for armed robbery, and Mr. Lewis was rightfully afraid. That day was the first day of school, and he is the guardian of his granddaughter, and he had just taken his granddaughter to school. She was in the back seat, and he just stopped at his home, he was backing into the car, and this gentleman, Mr. Connor, who was the one who was shot, wanted to get into the car. Mr. Lewis warned him three times, actually two times in the affidavit, and in the criminal record it shows three times, not to come closer. The man continued to come closer, and he shot. He didn't know that he killed him. It turned out he did. Mr. Lewis immediately went to the police station and turned himself in after depositing his daughter where she lived. It doesn't matter where she lived. She lived somewhere on the south side. In any event, the issue is, in that six-month period, there's no question about the six-month period, Your Honor. However, more importantly, with regard to the six-month period, just to still answer your question... So you agree that he knew, he had knowledge of the facts that gave rise to his claim within that period, and didn't file? Mr. Lewis had knowledge, certainly had knowledge. Is that what you're asking? Yes, and he didn't file the claim within that time period. I mean, he was, the company, usually on the company's side, the company is right that he got, the union gave him knowledge of everything. There's no question. I was at the deposition. I agree with everything Mr. Lewis said. The only deposition taken here is his sworn statement. So there's no issue. In fact, as the company correctly points out, I adopted their facts in our pleadings here. I had really tried to use that affidavit, the deposition, before Judge Leina Weber, but I don't want to digress. So he knew of the acts comprising the union's alleged breach? No, well... Because that's when that happens. That's a legal question, Your Honor. Yeah, and that's a question that deals with the statute of limitations, whether he knew it or not. The ultimate question is whether the union breached its duty of fair representation. That's the question before this court. I started to say that the company clearly breached the collective bargaining agreement because they acted, as set forth in that March 9 letter, what they wanted to know had nothing to do with what occurred on the job. I don't know for curiosity reasons or otherwise, they just insisted in every one of these grievances that Mr. Lewis was kept on suspension because he didn't explain the detail of what transpired when he shot Mr. Conner that day, and why he was indicted for two counts of murder in the first degree. Mr. Lewis, in the letter of August 28, when I represented him, we explained three different ways come Sunday, pardon the expression, basically on the facts of the letter, and we included a sworn statement of Mr. Lewis, which admittedly was not signed, and then unfortunately, apparently, was not initially included, but it was included subsequently, so it is part of the record. Mr. Lewis clearly in that sworn statement answered every one of the requests of the company in the March 9 letter, so basically, the company knew throughout from that point forward exactly what was involved, and the purpose of the August 28 letter was to obtain his reinstatement. Immediately, that's what the union tried to do. The company in their letter, in their position, simply calls it a settlement letter. It was not just a settlement letter. Yes, we offered to settle, but as part of that letter, we also offered to produce Mr. Lewis to come in so they could examine him. The company makes much of the fact that the affidavit wasn't sworn to. Well, Mr. Lewis had in his deposition sworn that he was told by his criminal lawyer, who did a great job in representing him, that he could not involve himself in these proceedings until the criminal trial for fear of incrimination under the Fifth Amendment or whatever amendment it was. What he couldn't do was tell his employer.  He couldn't, apparently, tell his employer that he didn't show up for three weeks. No, no, no, no, no. He missed two days. That's all. No, wait. He missed two days? That's all he did. The company is alleging he was gone for two weeks, not three weeks. The union in their cross-motion in the grievance procedure makes it very clear in a sworn statement that he was really only gone three days. So he's back to work after two days? No, he couldn't go back to work. He was suspended. He was suspended. There was a meeting. First of all, the first correspondence with Mr. Lewis, which was the August 28th, no, after he was out, August 22nd, while he was on vacation. So the company sent him a letter dated September 2nd, in which they told him he had to appear so they could examine him and talk to him. The company subsequently changed that date to September 22nd of 2011, and Mr. Lewis appeared. At that meeting, the union was present for the first time. Mr. Lewis never asked the union to be present, which was nice. I mean, they did their duty of fair representation. But Mr. Lewis had been instructed by his criminal lawyer because by this time he had, he asked for counsel when he was arrested, or when he turned himself in, I should say. So he was told not to do that. But what we did, curiously, and I think correctly, in the letter of August 28, which is Exhibit B to our second amended complaint, we gave the company everything they needed to know and wanted to know in the March 9 response, which was the last response to the grievance procedure. The union then sent a copy of that March 9 response to Mr. Lewis in a letter dated March 19. Importantly, in the letter dated March 19 of 2012, the union also said, and they volunteered this, that they would continue to monitor this case. Well, the question before this court is, what does that mean, monitor? We say it means they've got to pay attention. They can't close their eyes. Part of the letter of August 28 that we sent, we included a sworn statement from the criminal court judge before whom Mr. Lewis was to be tried, saying he was safe to be returned to work. That letter is dated about December of 2012. And so the union knew and the company knew that they should have returned him. The company, neither the company or the union ever responded to our letter of August 28, even though in that letter we spelled out, and Mr. Lewis spelled out exactly what's there. And that letter had three attachments, a three-page affidavit from Mr. Lewis. And in fact, even though it wasn't sworn to your honors, by the time this case gets to this point, we also attached in the third amended complaint, Exhibit I, which is the transcript of the criminal case. He said exactly the same thing under oath in the criminal case and was absolved in July, just before the 4th of July on 2013 of murder, two counts of murder in the first degree. Judge, we moved before Judge Leinenweber, the company tried to strike every one of our complaints. Judge Leinenweber ruled on August 14, 2013, denying their motion to strike the third amended complaint. And also in that, at the same time in response, we moved to stay or told the statute of limitations, Judge Williams. So that the fact is that from August 14, which is after he was convicted, in fact, the statute of limitations had been told by Judge Leinenweber, which means that the company continues to argue this case is time-barred. But Judge Leinenweber specifically explained why he told the statute of limitations. So there's no statute of limitations issue in this case at all. That's a red herring, if I can say. Counsel, your time has expired. Oh, I'm sorry. May I walk? Okay. Thank you, Your Honors. Thank you. Your Honors, may it please the Court, my name is William Picorni. I represent Dominick's Finer Foods in this case. The district court properly granted summary judgment in favor of Dominick's Finer Foods. And we respectfully ask this court to affirm that judgment, both for the reasons set forth in Judge Leinenweber's opinion and for the additional reasons that are set forth in our briefs to this court. The facts of this case are not in dispute, as counsel has just indicated. They've adopted our statement of facts in support of our motion for summary judgment. And we submit that Judge Leinenweber correctly found that our statement of facts was deemed admitted due to the plaintiff's failure to refute those facts or to present any additional facts refuting summary judgment. So we'd ask the court to confine its examination of the record in this case to the facts that are set forth in that statement. And then in terms of the statute of limitations, Judge Leinenweber found that that letter that was sent with respect to settlement, possible settlement, was sufficient to support tolling and that the claim wasn't time-barred. He did find that, Your Honor, and that's the one point where we respectfully disagree with the district court and ask this court to reach a different conclusion. This court's case law in both the Christensen case that is cited in our brief, as well as the cases cited in Christensen, including Sospi and Pantoja, make it very clear that once a plaintiff is aware of their claim, as counsel has indicated Mr. Lewis was in this case, the statute of limitations is told only where the plaintiff is following additional internal union appeal procedures, or required procedures. The cases from this court indicate that where the plaintiff simply sends additional letters asking for assistance from the union or asking the union to reconsider its position, that kind of letter doesn't toll the statute of limitations. And in this case, although the letter came from an attorney, there's nothing in this court's case law suggesting that a letter from an attorney should be treated any differently than if Mr. Lewis had simply continued calling the union and asking about his appeal. But in addition to that, Your Honor, the fact that a letter was sent in August of 2012 doesn't excuse the fact that the case was not then filed until January of the following year. So even if the statute of limitations was told, it doesn't excuse plaintiff from taking no further action after that August of 2012 letter. That being the case, the case would be time-barred even if that letter somehow did toll the statute. One thing I'd like to clarify for the court here is counsel has repeatedly referred in his briefs to his client having been exonerated in the criminal trial. Plaintiff was convicted of second-degree murder. The district court correctly found that those issues were never presented. The facts underlying his claim were never presented to Dominick's or the union. But regardless, whether or not the affidavit that counsel referred to that was supposed to be attached to his August 2012 letter but was undisputedly omitted, those facts were never before Dominick's or the union. And even if those facts were before Dominick's or the union, I'd ask the court if you are inclined to look at that affidavit to consider what it actually says. It indicates that a man approached the plaintiff's car. The plaintiff saw that his arm was bent and saw that he couldn't see anything in his hand but was afraid, and so he shot him. That is not a valid excuse for not showing up for work for two weeks. Being arrested for shooting and killing a man and subsequently being convicted for second-degree murder is not a valid excuse for not showing up for two weeks. Now, the question before the court on the merits of plaintiff's claims, leaving aside the statute of limitations issues, is whether the union acted unreasonably in failing to do more than it did to pursue Mr. Lewis's grievances. And as the district court properly found, and we submit to this court, it acted more than reasonably. It zealously represented Mr. Lewis to the best of its ability. But, as counsel indicated, Mr. Lewis was advised by criminal counsel not to talk to the union or to the company about the circumstances that led to his arrest and the subsequent criminal charges. And what was the total number of grievances they filed? Wasn't it six? Seven, Your Honor, including an additional grievance even after the August 28th letter. But, again, the company made its position very clear and the union clearly informed Mr. Lewis as of March 2012 that it did not feel it had the information it needed to advance those grievances. And, really, the only thing the union could have done was take these grievances to arbitration in order to advance them further. The record, the undisputed facts in Dominick's Statement of Material Facts, indicate that the union thought about whether to take these grievances to arbitration. It gave consideration to the issue. Now, again, the standard that plaintiff has to meet in this case is not whether the union, in theory, could have done something extra. Whether the union could have asked more questions or even whether the union should have done something more was right in the call that it made. But the fact is that the union considered whether these grievances had merit. It considered what an arbitrator was likely to do with these grievances if it brought them forward. And it concluded that this was not a good use of the union's limited resources. Mr. Lewis had not provided any information that would exonerate him, that would establish, no, I'm not guilty of the crimes that I'm charged with. He didn't even respond to the request for information. So under those circumstances, the union really had no choice but to do what it did. It continued to represent Mr. Lewis. It continued to communicate with him. It continued to follow up with the company. But it acted more than reasonably in declining to advance these grievances to arbitration. For all those reasons, Your Honor, unless there's further questions and for the reasons that are set forth in our briefs, we ask this court to affirm the judgment of the district court. Thank you. Thank you, Counsel. I'll give you another minute, Counsel. Two main points in rebuttal. Mr. Judge Leinerweber, in his August 14 decision, finding no mootness, specifically agreed with us that the letter of August 28, which brought this to the fore, was responsive to the March 19 letter of the union and, more importantly, the March 9 letter of the company. And therefore, it was considered. Now, that was a decision in August of 2013. So this is well after he was already found not guilty, curiously. And Judge Leinerweber, within a couple of weeks after that, well, that's my point there. And so I believe this is very important. More importantly, Your Honor, we believe that the union breached its duty of fair representation because they were on notice two different ways of the fact of Mr. Lewis's, I call it exoneration, found not guilty of murder one. He was only charged with murder one. I sat through that trial. I had nothing to do with it, but I sat there. That's all he was charged with, and he was found not guilty. Seems to me that's important in our country. And the union was on notice of that because the company, in a reply brief, to strike them in response to our motion that they shouldn't strike the complaint, put in a footnote, which they served the union. They were still a party then. And he was found not guilty. So the union should have come in. That's our position. And my position is under your cases, which we argue and which we set forth in paragraph 31 of the complaint, the third amended complaint, which is account one against the union, why they breached their duty of fair representation. So we submit it's all before your honors, and we hope that you hold our way. Thank you. Thank you, counsel. Thanks to both counsel. The case will be taken under advisement.